IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF
PENNSYLVANIA

| | |
|---|---|
| **EMILY IRVIN** | **CIVIL ACTION NO.** 3:23-cv-298 |
| **Plaintiff,** | |
| **v.** | |
| **PENNSYLVANIA DEPARTMENT OF CONSERVATION AND NATURAL RESOURCES,** | |
| **Defendant.** | |

## COMPLAINT

### I.      PRELIMINARY STATEMENT

Plaintiff, Emily Irvin, seeks compensatory and punitive damages, costs, and attorney's

fees from Defendant, Pennsylvania Department of Conversation and Natural Resources, because

of the hostile work environment, discrimination, retaliation that she endured due to her sex and

protected activity, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et

seq.

### II.      JURISDICTION

1.      This Court has jurisdiction of this matter by virtue of 28 U.S.C. § 1331, in that

this is a civil action wherein the matter in controversy arises under the laws of the United States.

2.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b), in that this is a

civil action in which jurisdiction is not founded solely on diversity of citizenship, and the acts

constituting a substantial part of the events and omissions giving rise to the claims occurred in

the Western District of Pennsylvania.

3.      On March 27, 2023, Plaintiff filed a Charge of Discrimination with the EEOC against Defendant, alleging sex discrimination and retaliation. On November 1, 2023, the EEOC issued a Notice of Right to Sue. [1]

### III.    PARTIES

4.      Plaintiff, Emily Irvin, is an adult individual who resides at 717 Mt. Carmel Drive, Windber, PA 15963. At the time of the incidents complained of in this lawsuit and presently, she was and is a citizen of the Commonwealth of Pennsylvania and the United States of America.

5.      Defendant, Pennsylvania Department of Conservation and Natural Resources (hereinafter "DCNR"), is headquartered at the Rachel Carson State Office Building, 400 Market Street, Harrisburg, PA 17105.

### IV.    STATEMENT OF CLAIM

6.      Ms. Irvin works for DCNR as a Park Resource Ranger at Blue Knob State Park.

7.      In August 2020, DCNR hired James McCorkle for the role of Park Operations Manager 1, and he became Ms. Irvin's direct supervisor.

8.      In March 2021, DCNR hired Michael Rosey for the role of Park Maintenance Supervisor for Blue Knob State Park.

9.      Almost immediately after the start of Mr. Rosey's employment with DCNR, he began verbally harassing Ms. Irvin.

10.     The following are examples of Mr. Rosey's verbal harassment:

a.   "Your hair looks beautiful, I'd love to put my face in it;"

b.   "I want to fuck you;"

c.   "Girl you look good in those pants."

---

[1] Once the administrative requirements have been exhausted, Plaintiff intends to amend this Complaint to add additional counts and parties under the PHRA.

d. Comments re: how "fit" Ms. Irvin was;

e. Comments re: how "pretty" she smelled because of her lotion and perfume;

f. Comments re: his sexual conquests;

g. Upon seeing Ms. Irvin walking towards the bathroom, Mr. Rosey would say, "Do you need that taken care of?" or "Do you need help in there?"

h. During a drive from a campground, Mr. Rosey winked at Ms. Irvin suggestively and (referring to the top of the hills at the Blue Knob State Park) asked, "Do you want to go for a ride to the top?"

i. Mr. Rosey also once called Ms. Irvin into his office on a day when they were alone in the building and told her that he wanted to get her position switched to a clerk position so that he "could get [her] full time." When Ms. Irvin responded that she liked the job she had and was not interested in changing her position, Mr. Rosey continued, "Yeah, you're probably right, if we were left alone in the office over the winter, we'd definitely have sex."

11. At other times, Mr. Rosey held his hands up in the air and made a squeezing motion, as if he were cupping Ms. Irvin's breasts.

12. Once, Mr. Rosey pinched his penis through his pants while looking at Ms. Irvin.

13. Mr. Rosey also often broke into Ms. Irvin's work vehicle, desk drawers, and cabinets, invading her privacy and stealing her personal belongings.

14. When Ms. Irvin complained to Mr. McCorkle about Mr. Rosey's theft of her personal belongings, Mr. McCorkle responded, "Lock it up, then."

15. Following this complaint, Ms. Irvin began locking her personal belongings in plastic tubs.

16. Mr. Rosey then began breaking into the locked containers.

3

17.     Ms. Irvin again complained to Mr. McCorkle about Mr. Rosey's behavior, and Mr. McCorkle offered only silence in response.

18.     At the end of the 2021 season, Ms. Irvin met with Mr. McCorkle for her EPR evaluation.

19.     During this meeting, Ms. Irvin again complained to Mr. McCorkle about Mr. Rosey's ongoing harassment.

20.     In response to Ms. Irvin's complaints, Mr. McCorkle dropped Ms. Irvin's EPR rating during that meeting.

21.     Mr. McCorkle then began scheduling Ms. Irvin's shifts later and later in the day and assigned her duties outside of her job responsibilities (such as cleaning the bathrooms) as punishment for her continued complaints of harassment.

22.     Upon information and belief, both Jessie Kohan, Environmental Educator for DCNR, and Frank Golesich, Park Resource Ranger for DCNR, also made complaints to Mr. McCorkle about Mr. Rosey's harassment of female employees.

23.     In March 2022, at the start of Blue Knob State Park's next season, Mr. McCorkle approached Ms. Irvin, Ms. Kohan, and Mr. Golesich.

24.     Targeting only the female employees, Mr. McCorkle made the following remark: "Girls, we're not going to have that drama that we did last year, right?"

25.     The "drama" that Mr. McCorkle referred to was the female staff's complaints about Mr. Rosey.

26.     Also at the start of the 2022 season, Mr. Rosey informed Ms. Irvin that Mr. McCorkle had instructed him to "watch" her.

27.     Mr. McCorkle's and Mr. Rosey's comments led Ms. Irvin to believe that not only did Mr. McCorkle have no intention of stopping Mr. Rosey's harassments, but also that he was informing Mr. Rosey of staff complaints.

28.     As a further example, on one occasion, just a day after Ms. Irvin had complained to Mr. McCorkle about Mr. Rosey's harassment, Mr. Rosey approached her and threatened to destroy the blackberry bushes that he knew were important to her.

29.     As the 2022 season continued, Mr. Rosey's inappropriate conduct escalated to physical harassment.

30.     Mr. Rosey frequently stood too close to Ms. Irvin, invading her personal space, and forcing her to brush up against him as she tried to walk past him.

31.     Mr. Rosey once commented that a pair of Ms. Irvin's running pants were his "favorites," and she never wore those pants to work again following that comment.

32.     Another day, when Ms. Irvin wore a different pair of athletic pants, Mr. Rosey slapped her buttocks as she walked past him.

33.     The most egregious act of battery occurred when Ms. Irvin was in the closet where office supplies were kept, and she turned around to find Mr. Rosey blocking the doorway to keep her from exiting.

34.     He put his hands up like he often did to make the squeezing motion described above, but this time, he suddenly grabbed Ms. Irvin's breast and squeezed so hard that he physically hurt her.

35.     Ms. Irvin slapped his hand away and yelled out in pain.

36.     Feeling shocked and not knowing how to react, Ms. Irvin yelled, "Jesus Christ, Michael, it's a breast, not a ball."

37.     In response, Mr. Rosey laughed and walked away.

38.     On October 26, 2022, during Ms. Irvin's EPR with Mr. McCorkle, she reiterated her complaints of Mr. Rosey's harassment.

39.     During this meeting, she asked Mr. McCorkle, "Do you know what it feels like to have your perpetrator watching you by instructions from your boss? How do you think I've felt having my perpetrator watching me by your command?"

40.     Mr. McCorkle responded, "I guess not good. I don't know if you don't think I'm in cahoots with him," to which Ms. Irvin responded, "I do think that, and I'm not the only one, but I'm the only one willing to tell you."

41.     Mr. McCorkle then said, "No, Frank [Golesich] had a really honest talk with me."

42.     In addition to enabling Mr. Rosey's harassment and retaliating against Ms. Irvin for her complaints of harassment, Mr. McCorkle also  refused multiple requests that she made to attend different training sessions, including chainsaw training and traffic training.

43.     Rather than sending Ms. Irvin, Mr. McCorkle sent less-experienced, male employees.

44.     On April 23, 2022, Ms. Irvin complained of sex discrimination to Mr. McCorkle by email: "It seems like I'm always pushed off til next round and I'm the most senior ranger. I'm starting to feel a certain way about this. I don't think I have an equal playing field with the guys."

45.     Rather than responding to Ms. Irvin's email, Mr. McCorkle called her and verbally denied her complaint.

46.     On November 1, 2022, Ms. Irvin filed a state Equal Employment Opportunity Discrimination Complaint against DCNR.

47.     On January 31, 2023, Pennsylvania's Bureau of Equal Employment Opportunity Investigations notified Ms. Irvin of the following: "After considering the information provided

and the information developed during the investigation, including the evidence indicated by testimony and relevant documents, the Bureau has concluded that the underlying claim of sexual harassment has been *substantiated*." *See* Exhibit A (emphasis in original).

48.     On March 9, 2023, DCNR notified Mr. McCorkle that he was being suspended without pay and demoted for the following reason related to Ms. Irvin: "Specifically, between March of 2021, and October of 2022, you knew or should have known that sexual harassment and other inappropriate behavior(s) were taking place. You failed to act upon this knowledge and neglected to report these allegations to your chain of command, per policy until October 26, 2022." *See* Exhibit B.

49.     The DCNR's conclusion in its March 9th letter establishes that it is liable for Mr. Rosey's harassment. *See Huston v. P&G Paper Prods. Corp., 568 F.3d 100, 105 (3d Cir. 2009).*

## V.      CLAIMS FOR RELIEF

### COUNT I – VIOLATION OF TITLE VII – HOSTILE WORK ENVIRONMENT

50.     Ms. Irvin incorporates by reference the averments contained in all preceding paragraphs as if fully set forth herein.

51.     DCNR has intentionally and willfully engaged in a series of unlawful acts in discriminating against Ms. Irvin with respect to compensation, terms, conditions, or privileges of employment in violation of the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

52.     DCNR created a hostile work environment for Ms. Irvin because of her sex and in retaliation for her protected activity, as evidenced by the actions described above.

53.     Ms. Irvin has been directly harmed as a result of DCNR's violations as is fully set forth above.

## COUNT II – VIOLATION OF TITLE VII – RETALIATION

54.     Ms. Irvin incorporates by reference the averments contained in the previous paragraphs as if set forth fully herein.

55.     DCNR has intentionally and willfully engaged in a series of unlawful acts in retaliating against Ms. Irvin with respect to compensation, terms, conditions, or privileges of employment in violation of the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

56.     DCNR's decision to retaliate against Mr. Irvin was motivated by Ms. Irvin's protected activity.

57.     Ms. Irvin has been directly harmed as a result of these violations as is fully set forth above.

## COUNT III – VIOLATION OF TITLE VII – SEX DISCRIMINATION

58.     Ms. Irvin incorporates by reference the averments contained in the previous paragraphs as if set forth fully herein.

59.     DCNR has intentionally and willfully engaged in a series of unlawful acts in discriminating against Ms. Irvin with respect to compensation, terms, conditions, or privileges of employment in violation of the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

60.     DCNR's decision to discriminate against Ms. Irvin was motivated by her sex.

61.     Ms. Irvin has been directly harmed as a result of these violations as is fully set forth above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Honorable Court will:

(a)     Assume jurisdiction herein;

(b)     Declare Defendant's conduct to be unlawful and an intentional violation of Plaintiff's rights;

(c)     Award Plaintiff compensatory and punitive damages;

(d)     Award Plaintiff pre- and post-judgment interest;

(e)     Award Plaintiff costs and attorney's fees; and

(f)     Grant such other relief as the Court deems just and appropriate.


**JURY TRIAL DEMANDED**

Respectfully Submitted,

/s/ *Nicholas W. Kennedy*

Nicholas W. Kennedy, Esquire
PA I.D. No. 317386

Quatrini Law Group
550 E. Pittsburgh St.
Greensburg, PA 15601
Phone: (724) 837-0080
Fax: (724) 837-1348
nwk@qrlegal.com
*Attorney for Plaintiff*